Honorable Judge Sylvia H. Rambo,                                  4-23-2008

I'm corresponding with Your Honor in lieu of my 3582(c)(2) motion. I have included a copy of my motion in this envelope. I sent the 3582 motion directly to Your Honor because I'm scheduled for release in September 2009 and I would like to be able to get the full benefit of the new Crack Cocaine Amendment. In filing this motion, I had a little trouble so I did the best that I could. I know that giving any amount of sentence reduction is ultimately up to Your Honor and I will respect the decision that Your Honor makes involving my case. I was sentenced to 120 months which was the maximum sentence for the case which I pled guilty to. I feel as though I may have a chance at some sort of reduction but I don't know how much if any.

I will look forward to hearing a decision from Your Honor at your earliest convenience.

                                              Sincerely,

                                              *Michael E. Shipe*
                                              Michael E. Shipe #10933-067
P.S                                           FCI-McKean
I may be transferred by the                   P.O. Box 8000
time that Your Honor is in                    Bradford, Pennsylvania 16701
possession of this motion.
Before responding, You Honor
may want to check the FBOP
website to locate me.

TO: JUDGE SYLVIA H. RAMBO
    MIDDLE DISTRICT OF PENNSYLVANIA
    228 WALNUT STREET
    P.O. BOX 983/ HARRISBURG, PA. 17108-0983

FR: MICHAEL E. SHIPE#10933-067
    FCI-McKEAN/P.O. BOX 8000
    BRADFORD, PA. 16701

RE: 18 U.S.C. 3582(c)(2) Letter in lieu of a more formal motion

Subj:

Dated: __APRIL, 12_____2008


Sir,

    Enclosed please find an Original and one copy of Defendants Letter/Motion and Certificates in Support. All concerned parties have been served as is reflected in the enclosed proof of service.

    Please have a copy returned to me stamped filed.

    I thank you for your time and attention regarding this matter.

Respectfully
*Michael E. Shipe*
Michael E. Shipe

|  |  |  |
|---|---|---|
| Plaintiff | : | Criminal No 01-CR-351-01 |
| THE UNITED STATES OF AMERICA | : |  |
| vs. | : | LETTER IN LIEU OF A MORE FORMAL 18 U.S.C. 3582 (c)(2) MOTION "WITHIN THE MEANING OF THE CRACK AMENDMENT" |
| MICHAEL EUGENE SHIPE |  |  |
| Defendant | : |  |

Please accept this letter in lieu of a more formal "3582" Motion, submitted within the meaning of the "New Crack Amendment".

18 U.S.C. § 3582(c)(2) provides; <u>MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT</u>-(c) The court may not modify a term of imprisonment once it has been imposed except that-(2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or Director of the Bureau of Prisons, or on it's own Motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the sentencing commission.

The background of 3582(c)(2) further provides that "if the commission reduces the term of imprisonment recommended

in the guidelines applicable to a particular offense or category of offenses, it shall specify in what circumstances and by what amount the sentence, of prisoners serving terms of imprisonment for the offense may be reduced.

In an historic vote, the commission agreed to allow prisoners serving crack cocaine sentences to seek sentence reductions that went into effect on March 3rd 2008.

The United States Sentencing Commission has repeatedly advised Congress since 1995 that there is no rational or scientific basis for the 100-to-1 ratio between crack and powder cocaine sentences. Also on December 10th 2007, the United States Supreme court ruled that judges can consider unfairness of the 100-to-1 ratio between crack cocaine and powder cocaine sentences and may impose a sentence below the crack guideline in cases the guideline sentence is too severe.

The Supreme Court ruled 7-2 that the federal guidelines on sentencing for cocaine violations are advisory only, rejecting a lower court ruling that they are effectively mandatory. Judges must consider the guideline range for a cocaine violation, the court said, but may conclude that they are to harsh when considering the disparity between punishment for crack cocaine and cocaine in powder form. Justice Ruth Bader Ginsberg wrote the decision in <u>Kimbrough v. United States</u>, 128 SCt 558 (2007) the ruling validates the view of the United States Sentencing Commission that the 100-to-1 crack verses cocaine disparity may exaggerate the seriousnes of the crack crime.

-2-

Ruling in a second guideling case <u>Gall v. United States</u>, ____U.S. ____(2007) the United States Supreme Court also by a 7-2 vote cleared the way for judges to impose sentences below the specified range and still have such punishment regarded as reasonable.

### TREATING AMENDED § 1B1.10 AS MANDATORY COULD VIOLATE BOOKER, KIMBROUGH, GALL AND 18 U.S.C. § 3582(c)(2)

A potential problem with amended § 1B1.10 is that the amendment may be designed to limit a courts ability to resentence a "crack" defendant in accord with the applicable section 3553(a) factors thereby requiring the court to violate it's obligations under section 3582(c)(2) to consider the factors set forth in section 3553(a) to the extent that they are applicable. When reducing the sentence. In particular, amended section 1B1.10 would require the district court to grant, at most, a two level reduction in every case even if the resulting sentence would still be greater than necessary to serve the purpose of sentencing or create unwarranted disparity or otherwise contradict an applicable section 3553(a) factor.

The crack guidelines section 3553(a)-related problems are well known and well documented. In Kimbrough, the Supreme Court identified three major issues associated with differential treatment of crack and powder offenders, which under the old guideline yiel[ed] sentences for crack offense three to six times longer than those for powder offenses involving equal amounts of drugs.

-3-

(1) the disparity was based on assumptions about the relative harmfulness of the two drugs, that more recent research and data no longer support, (2) the disparity leads to the anomalous result that retail crack dealers get longer sentences than the wholesale drug distributors who supply them with powder cocaine from which their crack is produced, and thus inconsistent with congressional policy to punish major drug dealers more severely than low-level dealers, and (3) the disparity fosters disrespect for and lack confidence in the criminal justice system because of a widely-held perception that it promotes unwarranted disparity based on race. The court also cited the commissions own conclusions that this disparate treatment of crack offenders was generally unwarranted and failed to meet the sentencing objectives set forth by Congress in both the Sentencing Reform Act and the 1986 Act.

Importantly, the amended guideline does not fully rectify these problems. Quoting the Commission, the Supreme Court wrote that the "modest amendment [still] yields sentences for crack offenses between two and five times longer than sentences for equal amounts of powder, and the Commission has recommended that the ratio be substantially reduced. It also noted that the Commission has described the amendment as only...a partial remedy for the problems generated by the crack/powder disparity. And the court found that [t]he amended guidelines still produce sentencing ranges keyed to the mandatory minimums in the 1986 Act, which was the source of the problems associated with the crack guideline in the first place.

The guideline as amended "now advances a crack/powder ratio that varies (at different offense levels) between 25 to 1 and 80 to 1, and the Commsiion has recommended a ratio of, at most, 20 to 1.

Because the amended guideline still results in sentences that are based on an unwarranted disparity and fails to serve the purposes of sentencing, a district court cannot automatically assume -as the Commission would have it -that a sentence under the amended guideline satisfies section 3553(a). And because the court has a statutory obligation to consider the applicable section 3553(a) factors when imposing a new sentence under section 3582(c)(2), the commsiion's policy statement to the contrary is invalid.

Even if the crack amendment did resolve the §3553(a) problems with the crack guideline (which it clearly did not), revised § 1B1.10 would still violate Booker insofar as it renders any part of the guidelines mandatory. Booker made clear that the right to have a jury find facts that are essential to the punishment is implicated whenever a judge seeks to impose a sentence that is not solely based on facts reflected in the jury verdict or admitted by the defendant. Many of the defendants who will be resentenced under section 3582(c)(2) were initially sentenced on the basis of facts that were neither found by the jury nor admitted by the defendant. Requiring a court to impose a new sentence based on facts that were initially found in violation of the sixth amendment would import that sixth amendment violation into the new sentence.

-5-

Booker also made clear that the guideline cannot be applied as mandatory in some circumstances and not others. The Court rejected the governments suggestion that it render the guidelines as advisory in any case in which the constitution prohibits judicial factfinding, but, leave them as binding in all other cases...[W]e do not see how it is possible to leave the guidelines as binding in other cases. For one thing, the government's proposal would impose mandatory guidelines-type limits upon a judge's ability to reduce sentences, but it would not impose those limits upon a judges ability to increase sentences. We do not believe that such one-way levers are compatible with Congress' intent. (see Booker, 543 U.S. at 266.

Though the commission has made some heavy handed changes to § 1B1.10 which is clearly intended to limit a courts ability to reduce sentences by more than two offense levels, begging the question of the extent to which the commission can limit a courts sentencing discretion under § 3582(c)(2).

Taken together, revised §§ 1B1.10(b)(1) and (b)(2) state that the court shall not reduce a defendants term of imprisonment to a term that is less than the minimum of the recalculated guideline range, which can only be determined by substituting the amended guideline for the prior version and leaving all other guideline decisions the same as before. In other words, if the defendant did not get a guideline departure before according to the commission, she or he can't get one now. (see amended United States Sentencing Guideline) § 1B1.10 Comment (n.3)

For those who received a departure the first time around, the commission suggest that a comparable reduction to the amended guideline range may be appropriate, meaning that if the defendant received a sentence that was approximately 20% less than the bottom of the guideline range at the original sentencing, s/he may be eligible for a 20% reduction from the bottom of the amended guideline range-a percentage-based test like that expressly rejected by the Supreme Court in Gall v. United States, 128 S.ct 586,595-96 (2007). Finally, in an act of Supreme irony, the commssion mentions Booker for the first time ever-but does so in the context of advising courts not to reduce a non-guideline sentence (i.e. a variance) any more than the proportional reduction approved for guideline departure cases. (see amended USSG § 1B1.10(b)(1)(B) The language states that "for non-guideline sentences" any further reduction would not be appropriate, and it is ambig-uous because it is not clear to what "reduction" the commission intended to refer.

It could mean the two level reduction authorized by the amended guideline, the two level reduction plus the proportional reduction authorized for depature cases, or the reduction from the guideline range granted at the initial sentencing when the non-guideline sentence was originally imposed. Defendant **Michael E. Shipe** reads § 1B1.10(b)(1)(B) to allow for a two level reduction plus a proportional reduction for non-guideline sentences, the same as for guideline departure sentences. such a reading is supported by Advisory Note 3, which discusses how courts should apply the policy statement to cases where the original term of imprisonment

-7-

was less than the term authorized by the applicable guideline range and does not distinguish between departures and non-guideline sentences, thereby suggesting that the Commissions intent in section 1B1.10(b)(1)(B) was to focus on proportional reductions and not to draw substantive distinctions between types of below guideline sentences. Any other interpretation should not be followed for at least three reasons. first, it would limit the sentencing court's ability to consider the § 3553(a) factors in imposing a new sentence in violation of the court's duty under § 3582(c)(2). Second, it would instruct courts to treat § 1B1.10 as mandatory and Third, it would violate the Commissions own statutory obligations under it's enabling statutes, 28 U.S.C. §§ 991 and 994.

## STATEMENT OF THE MATTER INVOLVED

Defendant **' Michael Eugene Shipe** appeared before this court for sentencing on **October 2, 2002** and consistent with the ratio and level then considered by this court, defendant was sentenced to **120 Months**.

Because the sentencing range has subsequently been lowered by the sentencing commission pursuant to 28 U.S.C. 994(o) defendant respectfully request this court to reduce his current term of imprisonment, considering the factors in § 3553(a) Kimbrough and Gall.

Thus this letter in lieu of a more formal motion.

## SENTENCING STANDARD

When sentencing a defendant, a District Court must consider all of the sentencing factors enumerated in 18 U.S.C. section 3553(a) see <u>United States v. Dean</u>, 414 F.3d 725, 728 (7th Cir 2005)

The ultimate command of the statute is after considering these factors, to impose a sentence that is "sufficient", but not greater than necessary to comply with the purposes set forth in subsection (a).

## POST SENTENCING CONDUCT

Consistent with application note 1(B)(iii) the court may consider post sentencing conduct of the defendant that occurred after imposition of the original term of imprisonment in determining (1) whether a reduction in the defendants term of imprisonment is warranted; and (2) the extent of "such reduction".... (emphasis added)

Since the time of his inception into the Bureau of Prisons defendant has made the following accomplishments and completed the listed programs which has and continue to be conducive to his growth and developement.

Defendant further submits that he has been placed on a waiting list for additional classess and programming which he has not listed in the following, but will be glad to submit copies of certificates from the same upon completion.

## POST SENTENCING ACCOMPLISHMENTS

1. 40 hour drug program at FCI-Cumberland in Cumberland, Maryland

2. Parenting I at USP-Allenwood in White Deer, Pennsylvania

3. Instructor of Songwriting Class, History of Hip-Hop Class and Scrabble Class at USP-Canaan in Waymart, Pennsylvania.

4. Worked in UNICOR at FCI-Cumberland which is a Prison Industry based work program where I learned to paint Government Seals and how to do silkscreening.

5. Taught myself how to type and I'm now up to 70 words a minute.

6. I've written three novels which are in the process of being edited and I intend on pursuing a career in writing.

C O N C L U S I O N

For all of the reasons stated above, it is respectfully requested within the intrest of fundamental fairness that this court grant relief consistent with the provisions of § 18 U.S.C. 3582(c)(2) and those decisions provided for in Kimbrough and Gall.

Dated **April 12, 2008**

**Michael Eugene Shipe**
Defendant

PROOF OF SERVICE

I  Michael Eugene Shipe  hereby ceretify that I did cause to be mailed one copy of the within Letter/Motion to the following, on the 12th day of  April  2008 from  FCI McKean Bradford, PA. via first class postage.

TO: William Behe Assistant United States Attorney

Middle District of Pennsylvania

228 Walnut Street/P.O. Box 983

Harrisburg, PA. 17108-0983

Dated: April 12, 2008

Michael E. Shipe